Mr. Epstein, do you want any time for rebuttal? Yes, Your Honor. May I please have three minutes for rebuttal? Done. You may proceed. Good morning. May I please the Court? Robert Epstein for the Appellant, Mr. Alexander Davis. Unless the Court directs otherwise, I'd like to begin with Issue 3, mostly for simplicity's sake. I think it's the most straightforward of the issues, as it's not dependent upon the facts, and any discussion of prejudice will naturally lead into the issues of entrapment and the sufficiency of the evidence. The government significantly misstated the law during closing argument by arguing that Davis' travel and possession of condoms were substantial steps towards the 2422B attempt offense. As a matter of law and common sense, they could not have been substantial steps. To take common sense first, Davis was charged with using his iPhone to try to persuade a fictitious minor to engage in sexual activity. The travel and possession of condoms here occurred after his use of the phone, so it could not possibly have been a substantial step towards this alleged violation. Hold up. The aim and object of the use of the phone is to get a minor to engage in sexual activity. So how is it that substantial steps in the attempt to accomplish that end are not relevant? It sounds like what you're saying is not just that they're not a substantial step. By your argument, they're just not relevant at all, no matter what he did afterward. If he went into the McDonald's with his pants around his ankles and grabbed a teenager, you'd say it's just not relevant because it happened later, right? No, Your Honor. I'm sorry if I wasn't clear in my briefing on this. The travel is certainly relevant, and it would be relevant to go to the issue of his attempt, but it wouldn't be a substantial step, right? How could it not be a substantial – how could it be relevant in any way if it doesn't constitute a substantial step? Because it sounds like what you're saying is it's all got to happen at the time you make the call, or it has nothing to do with an attempt. Am I misunderstanding you? Yes, Your Honor, and I'll try to be clear on this then. The travel can be relevant to intent just as a post-offense confession can be relevant to intent, but just as a confession is not a substantial step, neither is the travel, for the same reason. They're occurring after the offense has already allegedly been committed. So a substantial step in the context of one of these crimes where – and this is, you know, Tarkarski on down in our Third Circuit precedents. This is the use of wires. It's Internet, it's phone calls, it's text messaging. Your suggestion is that anything that happens after it is just – it's after the fact relevance, but it can't constitute a substantial step toward the attempt. If that's true, then what could possibly be happening in addition to the phone call or the text? Would the police have to go in and find something in the residence? What could be a substantial step? The substantial step, as this court said in Tarkarski, are the communications themselves. Did the defendant in those online communications attempt to persuade the fictitious minor? Did the communications themselves constitute a substantial step? And in Tarkarski – How about offering an iPad or an iPhone? Well, if they offered an iPad or an iPhone to try to persuade the minor to engage in sex, yes, that's a substantial step. We didn't have that here, though. And the government did not argue that to the jury as a substantial step here. Was it in the case? Was it evidence in the case? It was certainly evidence in the case. There was an offer of a phone, I believe, wasn't there? Right, to try to get the minor to agree to a meeting or the agent to agree to a meeting, not to try to get the agent to agree to sex. It's a significant distinction. Your position that the offer of the iPhone had to say, I'll give you an iPhone if you give me sex, it had to be that explicit? Not necessarily. But what we're talking about here now is whether, assuming – and I think we have to – that the argument was in error, that the travel could not be a substantial step. These questions then get into the issue of prejudice. Was the error harmless? Was there other evidence in the record of a substantial step? Could the offer of an iPad be considered a substantial step? I want to start there by saying, in looking at the question of harmless error, the question is, does this court – has the government proven beyond a reasonable doubt that this error didn't contribute to the verdict? And the offer of the iPad, was it even argued to the jury as being a substantial step? So I don't think this court could have a sure conviction that the prosecutor's erroneous argument didn't contribute to the verdict on the basis of a theory that the government didn't even keep fit to argue to the jury. Okay. Let's take a step back to your original point, which is that this is just erroneous to argue to the jury that travel and possession of condoms are substantial steps under the statute of conviction. What case are you relying on that says that the travel itself and the possession of condoms, which could certainly be viewed as an instrumentality to the end of having sex with a minor, that those after the fact things categorically cannot be considered as substantial steps? Well, it's Hornbook Law, Your Honor. The – a substantial step is defined in numerous cases. We cite United States v. Brins, Second Circuit, Manly, Second Circuit, Hoffice, Ninth Circuit, Bailey, Sixth Circuit. So the proposition of a substantial step, at the very least, has to be necessary to the confirmation of the crime. Then there are numerous cases, Getsky in the Ninth Circuit, Howard in the Fifth, Thomas in the Tenth, Bailey again in the Sixth, and Broussard in the Fifth, holding that travel is unnecessary to the commission of a 2422B offense. That was the issue raised in those cases. So by definition, if it's – I'm sorry, Your Honor. Yeah. I hear you saying it's Hornbook Law, but I don't hear you saying you've got a case that says what you're saying right now, which is that it can't be. You've got cases that say it's not necessary. You've got cases that talk about what a substantial step is. But you don't have a case that says that things that happen later cannot be a substantial step. Or do you? Well, then the one case that has specifically addressed the issue, as Your Honor has just put it, is the Neitzche decision from the district court in D.C., which squarely addressed and held in favor of the defendant on this issue, where the government did not see fit to take an appeal. Okay. But the logic of all of these other cases, it clearly cannot be a substantial step. The substantial step has to at the very least be necessary. If it's not necessary, it couldn't strongly corroborate the intent, and therefore it can't be a substantial step. Help me with the logic of that. Follow that logic. How is it the fact that something is not necessary means it is not corroborative or it's not indicative of or it's not supportive of? Give me the syllogism that takes you there. Well, let me try to explain it, if I may, by the very facts of this case. The travel doesn't provide any evidence of Davis' intent to persuade a minor, or a fictitious minor in this case, to have sex. It provides some evidence of an intent to have sex, but it provides no evidence at all that he has the intent to persuade a minor to have sex, and that's the intent. Why not? Why doesn't it? Doesn't the fact that he goes there show that he's interested in sex just as much as offering an iPhone on a telephone call or a text would show it? Doesn't it show I'm going to do something that I want to do? Isn't it indeed exactly like other cases where we've said if you put yourself in a position to do something, it indicates that you want to do it, you're actually interested in doing it. I thought that was what we said in Nestor. In Nestor we said, hey, there's evidence here that indicates that you wanted to do it. You took substantial steps calculated to put you into direct contact with a child, even if you didn't yet have that direct contact. You took steps to put you in contact. Isn't traveling to the place taking steps to put you in contact with the child? Your Honor, Nestor didn't involve travel. The substantial step in Nestor was the defendant's communications online with the adult intermediary in which he tried to persuade the adult intermediary to have sex. I wrote it. I understand. I know that. What I'm trying to tell you is we said in Nestor the fact that you were putting yourself in a position to do what you wanted made it a substantial step. Why isn't travel just like that? Because the travel shows an intent to have sex. It doesn't show an intent to persuade a minor to have sex. There's a difference between, and this Court recognized him in Tarkovsky, 2422B does not criminalize attempts to have sex with a minor. It criminalizes attempts to persuade a minor to have sex. Now, I'm not suggesting that attempts to have sex with a minor aren't deplorable. And if the adult travels, then he can be found guilty under 2423. But for 2422 with the mandatory minimum of 10 years, you have to try to persuade the minor to have sex. So there has to be evidence from the communications that the defendant was attempting to persuade. And that's what we don't have here, and that's what the government never argued to the jury. The government treated 2422 as if it criminalized just efforts to communicate with a minor about sex and to set up a date for sex. That's not what 2422B criminalizes. All right. Well, your time is effectively up, but we spent all it on this. And if my colleagues will indulge me, I do want to ask you a question about entrapment. If I understand the law as you laid it out and your colleague on the other side has discussed, there's a prima facie case that the defense has to make, and then the burden is to get that burden moved to the government. Have I got that right? Yes, sir. Okay. Can you tell us what constitutes a prima facie case and why that's made out here? Well, in terms of inducement, courts have recognized that inducement can take many, many forms. It can be subtle, and they certainly include what's referred to as dogged insistence and repeated suggestions. And here we have that in spades. We have 80 different texts from Block trying to get Davis to communicate sexually with them. In Croston, this court said that 10 to 11 request by the agent in that case to get the defendant to set up a meeting at which a bribe might occur, that that was a relentless pursuit and an inordinate amount of persuasion, and that constituted inducement as a matter of law. Okay. Now, that's inducement. Am I right that entrapment can be disproved either by proving beyond a reasonable doubt that the defendant was not induced or by proving beyond a reasonable doubt that he was predisposed? In other words, the government can go at either of those, and if it comes up with proof on either of those, it wins against that defense. Is that correct? Absolutely, Your Honor. Okay. So does that mean you have to come up with a prima facie case on both prongs? To the extent we do, we certainly did here, and the government didn't even make an argument against predisposition or lack thereof. Right. I understand that. I'm just trying to think through how this works. Can you tell us what looks like? What's a prima facie case about lack of predisposition look like? Okay. Well, here to begin with, they did a search of his phone, a 6,500-page report, and it revealed not only that he never had any efforts to persuade a minor to have sex, he never had contact with a minor. There were no pictures of minors. There was no child pornography, nothing like that. There's no prior criminal record. Here, you know, this Court has repeatedly said the most important factor in looking at predisposition is whether the defendant resisted. Here we have more resistance than any of the other cases finding entrapment as a matter of law. Davis, more than eight – Davis, I'm sorry. You've answered my question, and that's been helpful. I appreciate that. Thank you, Your Honor. Judge Mady or Judge Roth, do either of you have any questions for Ms. Dresden? Nothing, credit. I don't. Okay. Thank you, Ms. Dresden. We'll have you back on rebuttal. Thank you, Your Honor. Ms. McKilt. Good morning, Your Honor. I'm Emily McKilt for the government. Please proceed. Hello? Yes, please proceed. Yes. I'm sorry. I wasn't sure you could hear me. Your Honor, I will proceed in the order that the defense counsel has chosen and addressed the substantial step argument. And as you noted, he is arguing that the offense has to be completed entirely on the means of interstate communication, which in this case is text messages. He has no real authority for that. He's got the Nishty case, which is a district court in D.C., obviously not controlling authority here, and the government's not even persuasive authority considering that no other court has taken up that position. And when I'm thinking about this issue, Your Honor, my mind keeps reverting to the mail fraud statute, which similarly criminalizes use of interstate communication for a criminal purpose. For mail fraud, sending a letter that contributes to the purpose is enough for the offense. You don't have to have every communication for the fraud through the mail. And I would say that that would be the reasonable interpretation of the statute we're dealing with. Well, let's assume for the sake of discussion, well, before I ask you that, what's your best case to rebut Mr. Epstein's argument that Section 2422B just doesn't allow for travel to be a substantial step? Well, again, he is alone in that position. And I want to remind the court that what we're dealing with is not directly that issue, but it's whether the prosecutor misstated the law and then the effect of a misstatement, if that was in fact a misstatement. And I'd remind the court that the district court properly instructed the jury, the arguments of counsel are simply arguments that the court was the person who told them the law, and the defendant has not challenged the court's instructions. Yeah. Now, what's your best case for the proposition that 2422B, in fact, allows for travel to be a substantial step? Well, the issue, as I think we were on a discussion, was the substantial step needs to be something that corroborates the defendant's intent to commit the offense. And the government admits that if the offense is persuading a minor to have sex, which is something you can't be accomplished over the Internet. Okay. I'm going to let you talk about that later if you'd like. Let me try this one more time. What is your best case for the proposition that Section 2422B allows for travel to meet with the minor to be a substantial step? I would rely on the substantial, the very substantial body of paper that has held exactly that. And I would note that in the defendant's reply brief, he cited your name, since it's a death case, which is, I believe, a Ninth Circuit case. And in that case – Is that your best case? I'm just asking for your best case. Is that it? Your Honor, I did not rank them. But what I want to point out is that the issue gets to whether you could even have a conviction under the statute without travel. It was so well established, and this is even back in 2007 and it has not changed, it was so well established that travel was a substantial step that the issue on appeal was, could you even convict somebody if there wasn't travel? Now, Betsy, I believe, correctly concluded that, yes, you could. It wasn't an absolute requirement. In the course of the decision, it cites multiple cases finding that travel was a substantial step. And I've cited additional ones in my brief. I don't know that there's one particular one that is better than another. It's just that the prosecutor based his statement in closing on the very great body of law that, as it says, travel is a substantial step. Okay. So there was an error. Let's turn, unless Judge Roth or Judge Maney's got a question about this particular issue. Judge Maney or Judge Roth, anything you want to ask about this substantial step issue and the argument associated with it in closing? No, thank you. Nothing from me. All right. Then, Ms. McKilp, I'd like you to turn your attention to the entrapment argument, if you would, and take head on the assertion that certainly all over the briefing and Mr. Epstein's additional commentary here that Special Agent Block was relentless in trying to reel Mr. Davis in, including after it appeared Mr. Davis was ready to just be over with it. Your Honor, that is the consequence of characterization, and that is the characterization he argued to the jury. The jury didn't buy it. Did it be troubling at all that there's a gap of a few days where Davis isn't responding but Block is continuing to ping him, continuing to send things to him, continuing to try to get him to engage? Your Honor, during that period, I don't believe there were that many messages from Block or Marissa, as far as the defendant was concerned. It was a few days. What I had not checked, and, Your Honor, I apologize, I meant to, is what days of the week that involved, because, remember, the defendant is an observant Jew and testified that he does not communicate on the Sabbath, which would take out a chunk of that period, in fact, to cover that. It was a few days. It wasn't many. And I want to point out, Your Honor, the nature of Block's plus Marissa's communication. During that period, she is not begging him to communicate. She is not advertising her wares or holding out what a desirable person she was. She's texting him, can you mail the iPhone? She wants the present he promised her. You know, it is not, it's not, there's nothing, in fact, in the communication throughout. I am at a loss to find anything that would seem to be capable of overbearing the will of an adult man, and certainly one who is careful. The only thing that is in his case that is capable of influencing his behavior is his obvious desire to have sexual relations with 14-year-old girls. Now, this is- Do you concede, and apparently government did concede, I don't know, that he at least made out the prima facie case for his entrapment defense, that he was not predisposed and that the government induced him? He made a prima facie showing on that? No, Your Honor, I don't. There's a footnote in my brief that says so. He did testify at trial that he wasn't interested in sex with underage girls. So we'll argue, we concede that that was the no predisposition wrong. But as I said in there, there apparently was no discussion about whether he made out the inducement. Your Honor, I don't think he did. I do not think, even though Mr. Epstein is relentless about counting up the number of messages, this is not uncommon in texting. If you've encountered any teenagers, this is actually a very sparse text record because they tend to text all the time. And it was over a two-week period. And the important point here is this differentiates it from a lot of the other entrapment cases where people were physically present and one was there to put pressure on them and they knew each other in real life, so to speak. Here, the communication is entirely by text message. It's not entirely by text message. It starts on a website and it starts with the defendant posting on an adult website. And it starts with the government falsely representing that, you know, it's like a double falsehood, that I'm an adult woman. Now, that's where it starts. And I take it from the briefing that that's a matter of some moment to the defense side of this. When they say they were induced, I understand their argument to be very largely pointed to the fact that Mr. Davis went into this looking for a relationship with an adult woman. And that's what was being suggested by Block's original posting to Craigslist, an adult woman. He responded to that. It was only after that that the discussion turned to, you know, I'm a 14-year-old. So that's the, you know, why isn't that a prima facie case of inducement? The government posts and has taken it that it's an adult woman, and I respond to it, and then they try to get me for getting with a child. I mean, isn't that a prima facie case at least? No, Your Honor. It's very, very clear that the government is allowed to offer an opportunity. It was an opportunity for sex with a consenting adult based on the Craigslist listing. I take that to be their point. Isn't that a prima facie case for inducement? You offer me one thing, I respond to that offer, and then you change. Like they talk about it as bait and switch. Why isn't it exactly that? Your Honor, they didn't reveal Marissa's age after the defendant had been reeled into the relationship. The very first communication after the defendant sent his, also including one falsehood, misrepresenting his name and his age, sent his response saying he was interested in quote-unquote adult fun. The first response from Marissa is, I'm 14 to be straight, and then to tell the truth. And she never wavers from that, I am 14 to that. And my point with regard to the, this is a text communication relationship, is the defendant could have shut it off at any time. If he really wished to cease communication, all he had to do was block the number. Of course he says he did cut it off by not responding, but we've talked about that and we have your position on that. Your Honor, I would also note what his response was. He said, can you mail me the iPhone, and he said, I want to meet. There was no reluctance. There was no, why are you bothering me, you're a pain in the butt, I don't want to deal with this. It was leaping at it again, I want to meet, I want to meet, I want to meet, which the defendant's feelings flew out. And once that meeting was granted, that's when the defendant started talking about what the meeting was really for. Now, of course, they all knew it was for her back because the defendant admitted. Anything posted on that section of Craigslist is a fact. All right. We got you, Ms. McKillop. Let me ask my colleagues, Judge Mady and Judge Roth, if they have questions for you at this point. I have nothing further. Nothing further. Okay. Thank you, Ms. McKillop. We appreciate you, Your Honor. On behalf of the United States, Mr. Epstein, you have three minutes for rebuttal. Thank you, Your Honor. If I may begin with the entrapment point. Your Honor is correct. The false representation to begin the communication has been found. False representations have been found to constitute inducement in and of themselves. So we begin with that. The communications begin. Block starts asking Davis how far you want to go, what do you want to do with me. Davis almost immediately tries to terminate the communication. He explicitly says to Block, I'm not interested in having any sort of sex with you. To be honest, I'm gay. He then does not respond for three days to Block's repeated efforts to get him to resume. That is a lot of resistance. That's more resistance than what we see in many of the cases finding entrapment as a matter of law. And when Block finally does get him to resume and then, again, keeps trying to elicit the kind of conversations that would prohibit communications that might fall within 2422B, Davis explicitly says, I'm not comfortable texting sex with you. I don't want to have this kind of conversation. I just want to meet. We can see if we like each other and take it from there. It was only as a result of Block going on and on and on trying to get Davis to have the sort of communication that might violate the statute that Davis's resistance was finally broken. I think the communications make absolutely clear that if Davis had not encountered Block online, not only would it be likely that he wouldn't have violated the statute, it's a near certainty. Okay. Well, Your Honor, if I may, I have one point on the substantial step issue. I'm sorry, it's just me. Can we stay on entrapment for one additional question? Yes, please. What is good authority that you could point to that might help me understand the relevance of Mr. Davis's ability to effectively terminate all further contact with the government? Many cases deal with overcoming or overbearing based on repeated interactions. But this is unusual, as the government points out, in that the defendant has entire control over the ability to stop all communications completely with a single step. Is there anything that points to that kind of factual posture that you could point me to? Your Honor, it's a very good question. None of the cases, as far as I know, have addressed that exact point. Looking at the cases that have found entrapment as a matter of law, I think it's certainly inferrable in those situations that the defendants there had the power to terminate their contacts with the government agent. If you take Sherman, for example, where the government informant was trying to get the defendant to find a drug source for him, and they were attending the same AA-type meeting, if the defendant was uncomfortable with those requests being made from this person that he did not know well, which is another person who came to these meetings, he could have found a different meeting to go to. That certainly was within his power. And I think if we look at any of these different entrapment-as-a-matter-of-law cases, that power was within the defendant's control. So I don't think any of the cases have addressed that exact point well. Thank you. Any other questions, Judge Mady or Judge Roth? Nothing further. None for me. Okay. Mr. Epstein, this is off-topic but only slightly, and just by way of general reminder, we had over-length briefs here in this case. In the first instance, it was over-length brief filed with a motion for leave to file an over-length brief. It was granted with the notation that those sorts of motions should come before the over-length brief is filed, and then the reply brief was filed over-length at the same time as the motion asking for it. So I'm just asking you to carry the message, please, if you're going to ask for an over-length brief, do it before you file the over-length brief, before the deadline for the filing of the brief. You don't have to apologize. You don't have to answer. I'm just asking you to carry the message, if you would, please, sir. Okay? Understood, Your Honor. Thank you. Okay. We thank both counsel for a well-argued case, and we've got it under review.